J-A27029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

INTERSTATE FIRE PROTECTION : IN THE SUPERIOR COURT OF
COMPANY, INC., : PENNSYLVANIA
:
Appellee :
:
v. :
:
REPAL CONSTRUCTION COMPANY, :
INC., :
:
Appellant : No. 41 WDA 2014

Appeal from the Order Entered December 13, 2013,
In the Court of Common Pleas of Allegheny County,
Civil Division, at No. GD-11-21284.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 15, 2014**

Repal Construction Company, Inc. ("Repal" or "contractor") appeals from the December 13, 2013 order from the Court of Common Pleas of Allegheny County, overruling Repal's preliminary objections.  Specific to this appeal, Repal had alleged that claims in the complaint filed against it by Interstate Fire Protection Company, Inc. ("Interstate" or "subcontractor"), were subject to an arbitration agreement.  For the reasons that follow, we affirm.

Interstate is a fire protection subcontractor that performed work on construction projects for Repal.  On October 14, 2011, Interstate filed a three-count complaint against Repal seeking recovery for work it performed

on nine different projects governed by nine separate subcontracts. All of the subcontracts contained alternative dispute resolution provisions. The dispute resolution provisions in the nine contracts fall basically into two groups. The relevant clause in the WalMart,[1] Panera Bread, and Back Stage Pass agreements is found at Paragraph 4 of Exhibit A ("Exhibit A") attached to the subcontracts and reads:

> In case of any disputes between the Subcontractor and Contractor, the Subcontractor agrees that the form of dispute resolution between it and the contractor shall be governed by the terms of the Contract Documents to the same manner of dispute resolution as is provided for between the Owner and Contractor and by any and all decisions or determinations whether by court, arbitrator(s) or architect made with respect thereto. This provision is to be defined as requiring the Subcontractor to be governed by arbitration, mediation or legal or equitable action if the contractor is required to use those means of resolving contract disputes on the project with the Owner. However, notwithstanding anything to the contrary herein, the Contractor may elect that any dispute between it and the Subcontractor shall be governed by action in a court of law or equity. This election shall be made within 60 days after Subcontractor notifies Contractor of its intent to seek dispute resolution and specifically refers to this provision.

The pertinent clauses in the Union Aid Society, Tenant Fit-Out, Bryant Street Project, Third East Hills, and World Vision agreements include the

---

[1] The WalMart subcontract also included a provision requiring the parties to submit their claims to non-binding mediation as a condition precedent to filing suit. Addendum to the Repal Subcontract for the WalMart Project, Exhibit "C", ¶ 4. Although Repal referenced Interstate's failure to comply with this provision in its preliminary objections, the trial court did not address the unique clause included in the WalMart agreement. Repal does not challenge the trial court's omission in this regard on appeal.

above-recited provision, also attached as Exhibit A to each of those subcontracts, and an additional provision included in the body of the agreements:

**§ 6.1.2. Claims not involving the Owner.**

Contractor and Subcontractor agree that claims and disputes, between themselves, and/or the Contractor's surety, shall be resolved either by arbitration to be conducted by the Construction Dispute Resolution Group of the Allegheny County Bar Association ("CDRG") . . . or litigation before the Court of Common Pleas of Allegheny County, Pennsylvania or in the Federal District Court for the Western District of Pennsylvania, without a jury, or before a jury, all as the Contractor or Contractor's surety, if any, should in their sole discretion elect . . . . This shall be acknowledged as Subcontractor's consent to arbitration, notwithstanding that the decision to arbitrate disputes shall be in the sole discretion of Contractor.

The North Allegheny agreement includes the above-recited § 6.1.2. clause ("Paragraph 6") concerning claims not involving the owner; however, Exhibit A attached to the North Allegheny subcontract is an "open shop performance clause." The North Allegheny subcontract does not include the Exhibit A notice provision that is incorporated into the other eight agreements.

Repal filed preliminary objections to the complaint on December 12, 2011, alleging, *inter alia*, that the complaint must be dismissed based on Repal's reading of the language in the subcontracts that compels the parties to submit their claims to arbitration, if Repal so elects. On February 20, 2012, pursuant to Allegheny County Court Local Rule 1028(C)(1)(c)(ii),

Repal filed evidence in connection with its preliminary objections, to wit, letters dated February 17, 2012, informing Interstate of Repal's election to submit seven of the nine disputes to arbitration.[2] Repal also attached copies of contracts between it and the owners of four of the projects where Interstate performed subcontractor work.

Argument on Repal's preliminary objections was scheduled for March 12, 2012, but the parties agreed to a continuance so that they could attempt to reach an amicable resolution. However, there was minimal communication between the parties and, it was not until twenty months later on November 1, 2013, that Interstate filed an Answer to Repal's Preliminary Objections. Interstate argued that the matter could not be referred to arbitration because the arbitration entity, CDRG, no longer existed and because the request for arbitration was untimely.

After oral argument, the trial court overruled Repal's arbitration-based preliminary objection, reasoning:

> The Arbitration language is cast in the disjunctive and the Arbitration entity does not exist . . . . I do not believe the language of the contracts can permit me to <u>impose</u> some other Arbitration entity upon Plaintiff especially because of the word "or."

Trial Court Order, 12/13/13, at 2 (emphasis in original).

The trial court then overruled the remaining preliminary objections and

---

[2] Repal did not submit arbitration-election letters in regard to the WalMart and Back Stage Pass disputes.

ordered Repal to file an answer. **Id**.

On January 3, 2014, Repal filed an appeal.[3] On January 22, 2014, the trial court issued an opinion, concluding that the invocation of arbitration was outside the time limitation agreed upon, and further, that even if the invocation was timely, the entity for arbitration was now defunct.

Appellant raises the following issues for review:[4]

1. DID THE TRIAL COURT ERR IN FINDING THAT THE PARTIES DID NOT HAVE A VALID AGREEMENT TO ARBITRATE?

2. DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT APPELLANT'S INVOCATION OF DISPUTE RESOLUTION WAS OUTSIDE THE TIME LIMITATION IMPOSED AND AGREED UPON BY THE PARTIES, WHERE THE APPELLANT TIMELY NOTIFIED APPELLEE OF ITS ELECTION TO ARBITRATE?

3. DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT THE AGREEMENT TO ARBITRATE COULD NOT BE ENFORCED BECAUSE THE ARBITRATION ENTITY NO LONGER EXISTS?

Appellant's Brief at 3.

When reviewing a trial court's denial of a motion to compel arbitration, in the form of a preliminary objection raising an agreement for alternative dispute resolution, the standard of review is whether the trial court committed an abuse of discretion and whether the trial court's findings are

---

[3]  The trial court did not enter an order requiring a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

[4]   An appeal may be taken from an order denying an application to compel arbitration.  42 Pa.C.S. § 7320(a)(1); **Shadduck v. Christopher J. Kaclik, Inc.**, 713 A.2d 635, 636 (Pa. Super. 1998).

supported by substantial evidence. ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654–655, appeal denied, 86 A.3d 233 (2014), *cert. denied*., 34 S. Ct. 2890 (2014) (quoting ***Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa. Super. 2012)). In deciding whether the trial court should have compelled arbitration, we employ a two-part test: 1) does a valid agreement to arbitrate exist and 2) is the dispute within the scope of the agreement? ***Id***. "Arbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists." ***Midomo Co., Inc. v. Presbyterian Housing Development Co***., 739 A.2d 180, 187 (Pa. Super. 1999) (quoting ***Smith v. Cumberland Group, Ltd.***, 687 A.2d 1167, 1171 (Pa. Super. 1997)). If a valid agreement exists, the next inquiry is whether a claim is within the scope of an arbitration provision. This presents a question of law and our review of the trial court's conclusion is plenary. ***Smay v. E.R. Stuebner, Inc.,*** 864 A.2d 1266, 1272–1273 (Pa. Super. 2004). "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." ***Id***. (internal quotations omitted).

Preliminarily, Repal's and Interstate's respective characterizations of the trial court's decision as a pronouncement on the validity of the arbitration agreements themselves misconstrue the court's rationale. In fact, the trial court did not rule specifically on the agreements' validities;

rather, it determined first, that Appellant did not timely request arbitration in accordance with the subcontract provisions and, second, because the arbitration entity, CDRG, no longer existed, that enforcement of those provisions was impossible.[5]

We, in turn, perceive no reason to question the soundness of the agreements. On their faces, each agreement appears legitimate — they have been signed by the parties and contain the necessary elements of a contract. Although the agreements are not identical, the contractor and subcontractors agreed generally, that in some situations, disputes between them could be resolved via alternate dispute resolution. Thus, the sole question presented is whether the disagreements between Repal and Interstate fell within the scope of the arbitration agreements. While this inquiry may implicate whether the parties abided by particular provisions or whether certain paragraphs are capable of performance, the validity of the agreements is not in question.

Before we can parse the parties' respective arguments on the scope of the duties and obligations arising under the subcontracts, we must identify an inconsistency in the five agreements that include both Exhibit A and Paragraph 6. Although Exhibit A is far from a model of clarity, the first sentence provides that, in the event of a dispute, the subcontractor agrees

---

[5]    Additionally, neither party challenged the facial validity of the arbitration agreements during litigation of the preliminary objections.

that the form of dispute resolution between it and the contractor shall mimic the dispute resolution process articulated in the contracts between the owners and the contractor.[6]  The second sentence informs that the provision is understood as requiring subcontractors to be governed by "arbitration, mediation or legal or equitable action" if the contractor is required to use those means of resolving contract disputes on the project with an owner. Exhibit A to Subcontracts (except North Allegheny).  We agree with Repal that these two sentences describe procedures to be implemented when conflicts arise between contractors and owners and only tangentially involve subcontractors.

The third and fourth sentences of Exhibit A offer the best description of the applicable mechanics for resolving disputes solely between subcontractors and contractors.  These two sentences provide that the contractor has the right to elect to proceed in court and must provide the subcontractor notice of its election within sixty days after the subcontractor advises the contractor of its intent to seek dispute resolution.  Thus, if the subcontractor opts for an alternative dispute resolution forum and

_____

[6]  Repal included contracts between it and four of the owners in its evidence submitted in support of its preliminary objections, but did not identify or provide record citations to any provisions in these contracts referencing dispute resolution.  Our independent record review revealed that only one contractor–owner contract, between Repal and Bryant Street, included a dispute resolution clause.  As neither party argues the significance of the contractor-owner contracts, we render no opinion on their relevance to this lawsuit.

announces its intention to do so, the contractor may elect to proceed in common pleas court if it provides timely notice of this designation. However, there is no inverse right for the contractor to elect arbitration if the subcontractor initiates its action in a court of law or equity. Conversely, Paragraph 6 instructs that its terms should be understood as a subcontractor's consent to arbitration and that the decision to arbitrate is in the sole discretion of the contractor. Faced with these apparent irreconcilable clauses, we deem it prudent to dissect the issues as they pertain to each of the subcontracts or group of subcontracts. As much as piecemeal adjudication is disfavored, the variances in the subcontracts compel such a divided discussion.

### WalMart, Panera Bread, and Back Stage Pass Projects

Under the terms of the WalMart, Panera Bread, and Back Stage Pass subcontracts, if Interstate decides to initiate a claim against Repal in a forum other than a court of law or equity, Repal has the choice to opt out of the alternative dispute resolution forum and proceed in court. Here, Interstate filed suit in the Court of Common Pleas of Allegheny County. Exhibit A dictates that Repal must submit itself to that court's jurisdiction and cannot elect to proceed in arbitration. Thus, albeit for a reason other than the trial court's decision that the request for arbitration was untimely,[7] we conclude

_____

[7] We may affirm the trial court's decision on any ground regardless of the reasons relied upon by the trial court. ***Toy v. Metropolitan Life***

that the trial court did not abuse its discretion in overruling Repal's preliminary objection invoking its election for arbitration of the WalMart, Panera Bread, and Back Stage Pass disputes.

### Union Aid Society, Tenant Fit-Out, Bryant Street Project, Third East Hills, and World Vision Projects

These five subcontracts include the inconsistent provisions concerning Repal's option to proceed to arbitration. Exhibit A provides for no such right, while Paragraph 6 vests Repal with the sole discretion to elect arbitration. We need not grapple with the provisions' irreconcilability, however, because the trial court correctly decided that arbitration is unavailable for disputes arising under these subcontracts for the independent reason that the arbitration entity selected, the CDRG, no longer exists.

Repal argues that the fact that the CDRG is defunct should not preclude arbitration because the general intent to arbitrate controls and the identification of a particular arbitrator is not important. It also faults Interstate for delaying almost two years before filing its response to Repal's preliminary objections, noting that the CDRG was a viable arbitration entity when it filed its preliminary objections.

---

*Insurance Co.*, 863 A.2d 1, 14 (Pa. Super. 2004) (citing *Boyer v. Walker*, 714 A.2d 458, 463 n. 10 (Pa. Super. 1998).

*Stewart v. GGNSC–Canonsburg, L.P.*, 9 A.3d 215 (Pa. Super. 2010), is the prevailing case on whether the unavailability of a particular arbitrator renders the agreement to arbitrate unenforceable.[8]  In *Stewart*, an action was brought by a resident of the defendant–nursing home claiming that the defendants were negligent in the care provided to the plaintiff. The defendants filed preliminary objections seeking to compel enforcement of an arbitration agreement entered into by the parties.  The arbitration agreement provided that in the event of a dispute, the parties were to proceed to arbitration in accordance with the National Arbitration Forum ("NAF") Code, and the Code was to be administered only by the NAF.  The problem in the case was that the NAF was no longer accepting arbitration cases.  The trial court characterized the arbitration forum selection clause designating the NAF and its procedures as an essential term of the agreement.  In light of the failure to perform this essential element, the trial court held that the arbitration agreement was unenforceable.

---

[8]  On June 24, 2014, the Pennsylvania Supreme Court granted the Petition for Allowance of Appeal in *Wert v. ManorCare of Carlisle PA, LLC*, 95 A.3d 268, 269 (Pa. 2014).  One of the issues before the Supreme Court is whether this Court's decision in *Stewart*, holding that the unavailability of a particularly designated arbitrator voided an arbitration agreement, was incorrectly decided and should be reversed.  *Stewart*, however, remains controlling law.  *See Marks v. Nationwide Insurance Company*, 762 A.2d 1098, 1101 (Pa. Super. 2000) (as long as decision has not been overturned by Pennsylvania Supreme Court, decision by Superior Court remains binding in Superior Court).

A panel of this Court affirmed the trial court's ruling. In doing so, the Court held that "an arbitration agreement will not fail because of the unavailability of an arbitrator unless the parties' choice of forum is an 'integral part' of the agreement to arbitrate, rather than 'an ancillary logistical concern.'" 9 A.3d at 219 (quoting **Reddam v. KPMG L.L.P.**, 457 F.3d 1054, 1061 (9th Cir. 2006)). "At a minimum, for the selection of the arbitrator to be integral, "the arbitration clause must include an express statement designating a specific arbitrator." **Id**. (quotations omitted). The **Stewart** court concluded that the forum selection clause in the arbitration agreement at issue, specifying that the laws and procedures of the NAF shall govern the arbitration, was an essential portion of the agreement. The court thus declared that the agreement was unenforceable because the NAF was no longer available to adjudicate the matter, and, to conclude otherwise, would thwart the clear intent of the parties. **Id**. at 221–222.

Likewise, in this matter, the trial court determined that the specific contractual language designating the CDRG to arbitrate this dispute required the parties to proceed before that entity. We agree. Accordingly, the trial court did not abuse its discretion when it determined that the unavailability of the CDRG rendered the Union Aid Society, Tenant Fit-Out, Bryant Street Project, Third East Hills, and World Vision arbitration agreements unenforceable.

**North Allegheny Project**

The North Allegheny subcontract is governed solely by the Paragraph 6 arbitration clause. For the reasons explained above, the unavailability of the CDRG to arbitrate this dispute also renders this arbitration agreement unenforceable.

Finally, in response to Repal's grievance that Interstate's delay in filing its answer to Repal's preliminary objections occasioned the predicament posed by the CDRG's demise, the record demonstrates that neither party facilitated the progression of this lawsuit.

For the above–stated reasons, the trial court did not err in overruling Repal's preliminary objection to compel arbitration, and we affirm the trial court's order.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014